IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**MICHAEL W.** and **WALTER W. SMITH**,                    Case No. 1:14-cv-01143-CL

Plaintiffs,

**ORDER**

v.

**MUTUAL OF ENUMCLAW INSURANCE COMPANY**,

Defendant.

CLARKE, Magistrate Judge.

This action arises from an insurance claim related to the reported theft of personal property. Plaintiffs Michael and Walter Smith allege Defendant Mutual of Enumclaw Insurance Company refused to pay insurance benefits in breach of their contract. Currently before the Court is Defendant's motion for partial summary judgment (#40). For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND

The following facts are not in dispute.

## I.    The Insurance Policy

Michael Smith is listed as the insured on an insurance policy administered by Defendant.

Owens Decl. Ex. A, at 1. The policy explicitly covers:

> [P]ersonal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover property owned by:
> 1. others while the property is on the part of the "residence premises" occupied by an insured";
> 2. a guest or a "residence employee", while the property is in any residence occupied by an "insured".

Owens Decl. Ex. A, at 8. The policy limits Defendant's liability for personal property to

$107,660. Owens Decl. Ex. A, at 2. Further, it states:

> Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for [personal property], or $1000, whichever is greater.

Owens Decl. Ex. A, at 8. The policy provides the following pertinent definitions:

> In this policy, "you" and "your" refer to the "named 'insured'" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases, which appear in this policy in quotation marks (" ") are defined as follows:
> ... 8. "insured" means "you and residents of your household who are:
> a.   your relatives; or
> b.   other persons under the age of 21 and in the care of any person named above. . . .
> ... 16. "residence premises" means:
> a.   the one family dwelling, other structures, and grounds; or
> b.   that part of any other building;
> where you reside and which is shown as the "residence premises" in the Declarations. ...

Owens Decl. Ex. A, at 6-7 (emphasis added).

## II.    The Insurance Claim

On August 21, 2012, Michael Smith filed a theft claim under his policy with Defendant.

Owens Decl. ¶ 4, Ex. A. He claimed approximately $174,880 in personal property was stolen

from 958 West Park Street, Grants Pass, OR 97527 sometime between July 18th and July 20th of 2012. Owens Decl. ¶ 4; Owens Decl. Ex. B, at 1; Thenell Decl. Ex. G, at 5 (C. Smith Dep. 22:7-15). Many of the stolen items included in the insurance claim were the property of Michael Smith's father, Charles Smith. Owens Decl. ¶ 9; Thenell Decl. Ex. G, at 3-4 (C. Smith Dep.3:17-4:10).

**III.    958 West Park Street, Michael Smith, and Charles Smith**

The at-issue property, 958 West Park Street, is comprised of a main residence as well as "Unit B," a shop area and upstairs apartment. Thenell Decl. Ex. D, at 6 (McEnany Dep. 15:8-22). In May 2012, before the reported loss occurred, renters vacated the main residence and a real estate agent listed the property for sale. Thenell Decl. Ex. D, at 7-8, 11 (McEnancy Dep. 17:17-18:6, 30:12-31:2).

Micheal and Charles Smith both testify that they "consider 958 W. Park St. to be [their] primary residence." C. Smith Decl. ¶ 1; M. Smith Decl. ¶ 2. Moreover, Michael Smith testifies: "my father ... has resided with me for many years at 958 W Park St." M. Smith Decl. ¶ 1. Both Charles and Michael Smith have keys to the property. Tapper Decl. Ex. 2, at 7 (M.Smith Dep. 12:10-14).

Michael Smith lives in California and runs a business registered in California. Thenell Decl. Ex F, at 4, 8 (M. Smith Dep. 4:3-11 30:3-10). Michael Smith does not know whose name was on the utilities at 958 West Park. Tapper Decl. Ex. 2, at 4 (M. Smith Dep. 8:22-25). However, he paid for the property's utilities at least once. Tapper Decl. Ex. 2, at 5 (M. Smith Dep. 9:1-6). He does not remember the last time he spent a night at 958 West Park Street or how often he stays there. Thenell Decl. Ex. F, at 6 (M. Smith Dep. 10:1-7). Michael Smith has a California driver's license and does not remember the last time he was licensed in Oregon.

Thenell Decl. Ex. F, at 6 (M. Smith Dep. 10:8-21). Charles Smith's former significant other, Teddy Shepard, testified that Michael Smith has lived in Los Angeles since at least 2002. Thenell Decl. Ex. E, at 7, 13 (Shepard Dep. 37:4-9, 144:1-13). She explained Michael Smith "hates Grants Pass" and only visits "because of his dad or his grandfather or for other reasons of that nature." Thenell Decl. Ex. E, at 11-12 (Shepard Dep. 103:24-104:1). Shepard surmised that, on average, Michael Smith visits Grants Pass "once a year" with his visits increasing in frequency in recent years. At his deposition, Charles Smith testified that he sometimes stays at "Mike's house" which he confirmed is located in Long Beach. Thenell Decl. Ex. G, at 6 (C. Smith Dep. 23:4-10). However, Charles Smith also testified that his son "never really officially moved to California. He was down there looking for work originally and bought a house but we always maintained Park Street as our permanent place of residence." Tapper Decl. Ex. 1, at 4 (C. Smith Dep. 28:7-11).

Charles Smith testified that he stayed in Unit B of the property "frequently." Tapper Decl., Ex. 1, at 2, 7 (C. Smith Dep. 24:24-25:3, 24:8-10). However, Shepard said Charles Smith "came and left a lot." Thenell Decl. Ex. E, at 7, 9 (Shepard Dep. 37:4-9, 65:4). Michael Smith described his father as "kind of a nomad . . . he travels around to different places and stays in different places." Thenell Decl. Ex. F, at 7 (M. Smith Dep. 19:5-7).

### LEGAL STANDARD

Summary judgment is appropriate if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party fulfills its burden, the burden shifts to the non-moving party who must go beyond the pleadings to identify genuine issues of fact. *Celotex Corp.*, 477 U.S. at 324. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Fed. R. Civ. P. 56, designate specific facts that show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076.

The court must view the evidence in the light most favorable to the nonmoving party. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). All reasonable doubt as to the existence of a genuine dispute of material fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981). However, facts must be "viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendant moves for summary judgment on the following issues. First, Defendant argues 958 West Park Street was not Michael Smith's "residence premises" and, accordingly, personal

property stored therein is not covered in full. Second, Defendant states Charles Smith does not qualify as "insured" under the policy's definition. The Court considers each matter in turn.

## I.    There is No Genuine Factual Dispute Regarding Where Michael Smith Resides.

Defendant asserts 958 West Park Street was not Michael Smith's "residence premises." Accordingly, pursuant to the insurance policy, Defendant's liability, if any, for personal property stolen from 958 West Park Street is limited to $10,766: 10 percent of the policy's $107,660 limit of liability for personal property. Owens Decl. Ex. A, at 8.

Plaintiffs contend Defendant's argument is foreclosed by *Farmers Ins. Co. of Oregon v. Trutanich*, 123 Or.App. 6, 12-13 (1993). There, an insurance company denied coverage for a home fire, arguing that the property did not qualify as a covered "residence premises" because the insured had rented it out. *Id.* at 13. The insurance company based its argument on the following definition of "residence premises[:]" "the one or two family dwelling and separate structures or that part of any other building where you reside[.]" *Id.* (emphasis in original). The Oregon Court of Appeals rejected the company's argument and found the definition to be ambiguous. "The phrase 'where you reside' could be grammatically interpreted to modify only 'part of any other building,' not 'family dwelling.'" *Id.* at 13. In any event, "[e]ven if [the phrase] was meant to modify 'family dwelling,'" the court held "the 'you reside' language alone is insufficient to take the house out of coverage" because it does not give the insured "specific and unequivocal notice" that he will forfeit his coverage if he rents out his home. *Id.*

*Trutanich* is distinguishable in three respects. First, it involved a coverage denial, not a liability limit. Policy considerations weighed strongly in favor of ensuring a person could not forfeit all coverage without clear notice. *Id.* A reduced limit of liability is not as severe or concerning as an outright denial. Relatedly, *Trutanich* involved the destruction of a home: "the

asset which often represents all the remaining proceeds of a life-time of labor." *Id.* (quoting *Insurance Co. of North America v. Howard*, 679 F.2d 147, 149 (9th Cir. 1982)). The theft of personal property is not an equivalent loss. Third, there are key differences between the definition of "residence premises" at issue in *Trutanich* and the definition presently before the Court. Our provision is structured so that the phrase "where you reside" modifies both "a. the one family dwelling, other structures, and grounds[,]" as well as "b. that part of any other building." Owens Decl. Ex. A, at 7. Regardless of what kind of structure is at issue, the insured must reside there in order for it to qualify as his "residence premises." *Truatanich*'s definition was a single sentence that could be read to define residence premises as "one or two family dwelling and separate structures" or "that part of any other building where you reside." *Id.* The residency requirement did not plainly apply to family dwellings. Therefore, the Oregon Court of Appeals' holding in *Trutanich* does not govern Defendant's pending motion.

The issue before the Court is whether there is a genuine factual dispute regarding where Michael Smith "resides." Both parties cite to case law discussing a different but closely related question: how a person qualifies as a resident of an insured's household. Under Oregon law, whether a person is a resident of a household is a question of fact. *State Farm Mut. Auto. Ins. Co. v. McCormick*, 171 Or. App. 657, 660 (2000).[1] "However, the question becomes a matter of law "when the evidence does not disclose a factual situation from which it can be said that differing inferences can be drawn." *Id.* (internal quotation and citation omitted). Four factors are relevant: (1) whether the person and insured live under one roof; (2) the length of time they have lived together; (3) whether the residence is intended to be permanent or temporary; and (4) whether the parties are financially interdependent. *Id.* at 661. Collectively, these factors focus on the

---

[1] Under the *Erie* doctrine, the Court must apply state substantive law and federal procedural law in this diversity action. *Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007); *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

Page 7 – ORDER

larger question of "whether the insured and others in the household <u>intend</u> for the insured's house to be their place of permanent residency and reasonably act on that intent." *Farmers Ins. Co. of Oregon v. Jeske*, 157 Or. App. 362, 366 (1998) (emphasis in original).

Just one inference can be reasonably drawn from the record before the Court: Michael Smith does not reside at 958 West Park. Even accepting as true Michael Smith's testimony that he considered 958 West Park to be his "primary residence[,]" there is no evidence that he reasonably acted on that intent. *Id.*; M. Smith Decl. ¶ 2. The record establishes that Michael Smith lives, works, and is licensed to drive in California. He does not recall the last time he stayed at the 958 West Park or how often he stays there. Ms. Shepard estimates Michael Smith visits the state, on average, once a year. There is no evidence that Michael Smith lived on the property at the time of loss, much less than he intended to do so on a permanent basis. Michael Smith's statement that he "has resided ... for many years at 958 W Park St." is not sufficiently specific to contradict the evidence before the Court. M. Smith Decl. ¶ 1. Reading this statement to agree with Michael Smith's deposition testimony, the Court concludes Michael Smith must be referring to a time period well before the loss occurred. This is because the summary judgment record establishes Michael Smith has not lived in Grants Pass since the early 2000s. Therefore, viewing the evidence in the light most favorable to Plaintiffs, the Court finds summary judgment in Defendant's favor is appropriate. 958 West Park Street does not qualify as Michael Smith's "residence premises" under the insurance policy.

## II.    There is No Evidence that Charles Smith Qualifies as a Resident of Michael Smith's Household.

The insurance policy defines "insured" to include the named insured, Michael Smith, as well as relatives who are residents of his household. Owens Decl. Ex. A, at 6. Defendant argues Charles Smith does not fit within either category. He is not named in the policy. Nor does he

qualify as a resident of his son's household. Plaintiffs respond by presenting evidence that Charles Smith resides at 958 West Park.

Even accepting Plaintiffs' showing, summary judgment in Defendant's favor is appropriate. As discussed above, there is no genuine dispute that Michael Smith does not reside in Grants Pass. 958 West Park is not Michael Smith's household. It follows that even if 958 West Park is Charles Smith's permanent residence as Plaintiffs suggest, Charles Smith would not qualify as a resident of Michael Smith's household. There is no evidence that the parties live under one roof or are financially intertwined. *McCormick*, 171 Or.App. at 660. Accordingly, there is no basis from which a fact finder could conclude Charles Smith qualifies as "insured" under the policy's definition.

## ORDER

Based on the foregoing analysis, Defendant's motion for summary judgment (#40) is **GRANTED**.

It is so ORDERED and DATED this ___5___ day of August 2015.

MARK D. CLARKE
United States Magistrate Judge